(85 App. Div. 162.)

PEOPLE ex rel. WILLIAMS v. McDONOUGH, State Secretary, et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. STATES — AWARD OF DEPARTMENT PRINTING — DETERMINATION OF BOARD — REVIEW—CERTIORARI.

    Under State Printing Law, Laws 1901, p. 1252, c. 507, § 10, providing that the board shall open the proposals and contract with the person making the lowest bid, and may discriminate in favor of such bid as it may deem most favorable to the state, computed on the basis of the amount of the work done during the preceding year of the various kinds called for by the proposal, where the printing board, in giving notice to bidders for the department printing, furnished blanks for proposals in the form prescribed, including the statutory definitions of the various kinds of work, and set forth the amount of work which was performed during the preceding year of the various kinds, an award to the lowest bidder, computing the bids on a basis of the work of the preceding year, and stating it as provided by such definitions, will be confirmed, though a computation of another proposal on the basis of the previous year, without consideration of the changes made by the definitions, showed a lower bid.

Certiorari by the people, on relation of Charles F. Williams, to John T. McDonough, as Secretary of State, and others, constituting the printing board,, commanding them to certify and return to the office of the clerk of the county of Albany all their proceedings in awarding the department printing to the Albany Evening Union Company, including the evidence on which they proceeded. Award confirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Mills & Murphy (Lewis E. Carr, of counsel), for relator.
J. Newton Fiero, for Albany Evening Union Company.

CHASE, J. We are of the opinion that the determination of the printing board in awarding the department printing to the Albany Evening Union Company should be confirmed on the merits, and that it is unnecessary to consider the other questions discussed by counsel. The state printing law (chapter 507, p. 1246, Laws 1901) became a law April 23, 1901, and the contract with the Albany Evening Union Company was the first contract for the department printing made under that law. Prior to 1901, contracts for the department printing were let pursuant to section 72 of the executive law (chapter 683, p. 1700, Laws 1892, as amended by chapter 477, p. 1152, Laws 1900). Under the executive law the words "circular," "blank," and "pamphlet" were not defined, but under the state printing law (section 10, Laws 1901, p. 1252, c. 507) they are defined. About June 1, 1902, the printing board duly gave notice, as required by law, that until July 2, 1902, they would receive sealed proposals for the whole of the department printing for the period commencing on the 20th day of January, 1903, and ending on the 30th day of September, 1904, which notice to bidders set forth, as near as may be, the amount of work which was performed during the preceding year of the various kinds called for by the proposal. The printing board also prepared and furnished, to all persons desiring to bid for the department printing, blanks for proposals or bids for such printing, in the form prescribed by said section 10, including therein the definitions as stated in said section. The amount of work which was performed during the preceding year of the various kinds called for by the proposal was stated according to the way in which the same had been respectively designated prior to said definitions. Applying said definitions in determining the amount of each kind of work to be done materially affected the number of pieces of work of the particular kinds. The relator is the person with whom the last preceding contract for department printing was made, and he was familiar with the work that had been done and the manner of designating the same, and the changes effected by counting the different kinds of work in accordance with the definitions contained in the state printing law. The printing board received 11 bids. The bid of the relator for circulars was very low, while his bid for blanks was very high, being in many instances not only much higher than any other bidder, but more than 50 per cent. higher than the commercial rate for the same work. A statement of the bids computed upon the basis of the previous year, with-

out consideration of the changes made by said definitions, shows the total amount of the relator's bid to be $12,962.29, and that he was the lowest bidder; but computing said bids on a basis of the work of the preceding year, and stating the same as provided by said definitions, the total amount of the relator's bid was $25,881.80, and the Albany Evening Union Company was the lowest bidder.

An unbalanced bid in public contracts is defined by the Century Dictionary to be "a bid for the performance of a given work at specified rates for each of the various kinds of labor or material required, which, by being made on an erroneous estimate of quantities of each, appears, assuming these quantities to be correct, to be low in comparison with other bids, when a computation based upon the true quantities would make the bid high." The bid of the relator and that of three other bidders, respectively, were not uniform in the price for similar work, and were unbalanced bids. The other seven bids, respectively, were uniform as relating to similar work, and they did not discriminate for or against particular kinds of work. Under the definitions stated, a large proportion of the work previously called "circulars" were termed "blanks." This very large decrease in the number of circulars, and very large increase in the number of blanks, made the small bid on circulars and the large bid on blanks most unfavorable to the state, and if the relator's bid had been accepted the contract would have resulted in a large profit to him, and a corresponding loss to the state.

Most people are familiar with the effort of excavating contractors to obtain superior knowledge of the different materials to be excavated, then, with such superior knowledge, so make their bid that it shall appear to be low in comparison with other bids, when in fact it will result in enormous profits to the contractor. It is evident from the record that the relator attempted to use his superior knowledge in regard to the number of circulars, blanks, and pamphlets as they would necessarily be counted under the definitions stated, for the purpose of making an unbalanced bid to his subsequent profit.

Said section 10 of the state printing law, Laws 1901, p. 1252, c. 507, provides:

"The said board shall open said proposals and enter into a contract with such person, corporation or firm, as shall make the lowest offer and it may discriminate in favor of such bid as it may deem most favorable to the state computed upon the basis of the amount of work done during the preceding year of the various kinds called for by the proposal."

The printing board passed a resolution as follows:

"Resolved, that it appearing to the satisfaction of this board that the bid for the department printing of the Albany Evening Union Company, submitted in accordance with the statutes and the rules of this board, computed upon the amount of work done during the preceding year of the various kinds called for by the proposal, in accordance with the definitions of the statute pursuant to which the contract for said work is to be let, is the most favorable to the state of any of the bids submitted as aforesaid, the contract for said printing be and the same hereby is awarded to said Albany Evening Union Company,"

—And a contract was executed accordingly.

The action of the printing board was within the express authority of said statute. We do not understand that the relator claims to have

been misled by the published notice to bidders; indeed, it is evident that, with his superior knowledge of the subject, such claim could not be successfully made.

The determination of the printing board should be confirmed, with $50 costs and disbursements to the Albany Evening Union Company. All concur.